UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BOSTON GRANITE EXCHANGE, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:11-cv-11898-JLT |
| | * | |
| GREATER BOSTON GRANITE, LLC, | * | |
| | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM and ORDER

August 29, 2012

TAURO, J.

I.  Introduction

Parties in this action are wholesale distributors of granite, marble, and other stone products in the Northeastern United States. Plaintiff Boston Granite Exchange, Inc., brings this action against Defendant Greater Boston Granite, LLC, under federal and state law for trademark infringement, trademark dilution, false designation, unfair competition, and damages. At issue here is Defendant's Motion to Dismiss Plaintiff's Amended Complaint [#12], which, for the reasons stated below, is ALLOWED IN PART and DENIED IN PART. Also at issue is Defendant's Motion to Dismiss Plaintiff's Complaint [#7], which is DENIED AS MOOT.

II.   Background

    A.   Factual Background[1]

Plaintiff Boston Granite Exchange, Inc. is one of the largest wholesale retailers of granite, marble, and other natural stone products in the northeast.[2] Plaintiff conducts extensive business in New England and serves clients in New York and Pennsylvania as well.[3] Plaintiff has done business under the name Boston Granite Exchange ("BGE") since 1999 and incorporated under the name BGE in 2002.[4] BGE has been a registered trademark with the Commonwealth of Massachusetts under Reg. No. 71891 since October 23, 2009.[5] Plaintiff has also operated a website, www.bgeusa.com, since 2001.[6]

---

[1] Because the court decides a motion to dismiss, the court relates the facts as they appear in the Plaintiff's Amended Complaint [#12], Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008), and construes them in the light most favorable to the Plaintiff, see Pettengill v. Curtis, 584 F. Supp. 2d 348, 362 (D. Mass. 2008) (quoting Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007)).

[2] Am. Compl. [#10] ¶ 10.

[3] Am. Compl. ¶¶ 6, 10.

[4] Am. Compl. ¶¶ 6-7, 35.

[5] Am. Compl. ¶ 8. Defendant argues that, because several other businesses use or used names containing the descriptive phrase "Boston Granite" in the same twelve year period that Plaintiff has used BGE, Plaintiff has never been the exclusive user of the phrase as part of a mark and, therefore, cannot claim an entitlement to trademark protection for BGE. It would be inappropriate at the motion to dismiss stage to weigh Defendant's statements as evidence in favor of dismissal. Akamai Techs., Inc. v. Deutsche Bank A.G., 764 F. Supp. 2d 263, 267 (D. Mass. 2011) (stating that a factual challenge is premature at the motion to dismiss stage and must wait to be addressed on a motion for summary judgment) (Tauro, J.).

[6] Am. Compl. ¶ 13.

In mid-2011, Plaintiff filed an application to register BGE with the United States Patent and Trademark Office ("USPTO").[7] The USPTO initially denied Plaintiff's application in an Office Action issued on September 13, 2011, on the grounds that BGE is not entitled to automatic protection because it is not an inherently distinctive mark, but merely a geographically descriptive mark.[8] The USPTO indicated in its Office Action that Plaintiff could take further action to show an entitlement to trademark protection by submitting evidence that BGE had achieved distinctiveness by acquiring a secondary meaning in the minds of consumers.[9]

The USPTO published the mark BGE in the Federal Register for comments on opposition to registration on May 29, 2012.[10] By the expiration of the comments period on June 28, 2012, no individual or entity opposed the registration of BGE as a trademark.[11] As a result, and pursuant to 37 C.F.R. § 2.81, the USPTO now plans to release a Certificate of Registration for BGE as a trademark. The certificate was scheduled to issue on August 14, 2012.[12]

Plaintiff commenced this action against Defendant Greater Boston Granite, LLC ("Defendant"), on October 13, 2011. Defendant formerly did business under the name J.C. International, LLC, and until July 2009, Defendant engaged primarily in remodeling commercial

---

[7] Am. Compl. ¶ 9; Aff. of Stacy C. Friends [#17] ¶ 2.

[8] Am. Compl. ¶ 9.

[9] Decl. Re. Def.'s Mot. Dismiss [# 9] Ex. A, 3; Aff. of Stacy C. Friends ¶ 3.

[10] Aff. of Stacy C. Friends ¶ 4, 6.

[11] Aff. of Stacy C. Friends ¶ 6-7.

[12] Aff. of Stacy C. Friends ¶ 8.

and residential properties and importing decorative hardware and limited stone products.[13] In July 2009, Defendant restructured its business by abandoning its remodeling activities and engaging solely in the importation and distribution of granite, marble, and other stone products.[14] Defendant also began to use the name Greater Boston Granite ("GBG").[15]

At that time, Plaintiff became aware of Defendant's operations under the name GBG, and Plaintiff contacted Defendant. Plaintiff informed Defendant that its use of the name GBG constituted an infringement on Plaintiff's Massachusetts registered trademark, BGE.[16] Defendant asserted a right to use GBG as its name and assured Plaintiff that it would conduct business only in the Boston area.[17]

Defendant recently launched a website, www.greaterbostongranite.com, which enables it to market and sell its stone products throughout New England and in other parts of the country.[18] Defendant's website is similar to Plaintiff's in its showcasing of granite and marble samples.[19] When a Web search for BGE is conducted, Defendant's website appears among the search results.[20] Plaintiff is concerned that Defendant's presence on the World Wide Web under the name

---

[13] Am. Compl. ¶¶ 17-19.

[14] Am. Compl. ¶ 20.

[15] Am. Compl. ¶ 17.

[16] Am. Compl. ¶¶ 21-22.

[17] Am. Compl. ¶ 23.

[18] Am. Compl. ¶ 25.

[19] Am. Compl. ¶ 26.

[20] Am. Compl. ¶ 29.

GBG will result in consumer confusion.[21]

In late 2010 and early 2011, Plaintiff experienced several instances of actual consumer confusion in which customers who had been referred to Plaintiff initially contacted Defendant by mistake.[22] Plaintiff alleges that Defendant chose a similar mark and website design in a deliberate effort to falsely associate its business with Plaintiff's and to capitalize on Plaintiff's established goodwill with customers in the regional stone market.[23]

Plaintiff alleges the following: (1) trademark infringement; (2) false designation; (3) trademark dilution; (4) recovery of profits, damages, costs, and attorney's fees; (5) violation of Mass. Gen. Laws c. 110H §§ 12 and 13; (6) violation of Mass. Gen. Laws c. 93A § 11; and (7) common law trademark infringement and unfair competition.[24]

B.  Procedural Background

On October 26, 2011, Plaintiff filed its initial Complaint [#1]. Defendant filed its first Motion to Dismiss [#7] on November 18, 2011. In response to the objections in Defendant's Motion, Plaintiff filed an Amended Complaint [#10] on December 2, 2011. Defendant filed its Motion to Dismiss Plaintiff's Amended Complaint [#12] on December 19, 2011. On July 20, 2012, Plaintiff filed the Affidavit [#17] of its counsel, Ms. Stacy Friends, detailing the progress of Plaintiff's trademark application before the USPTO, and stating that the agency has approved BGE as a registrable trademark and has scheduled a Certificate of Registration to issue on August

---

[21] Am. Compl. ¶¶ 30-31.

[22] Am. Compl. ¶ 30.

[23] Am. Compl. ¶¶ 32, 39, 43, 49, 56, 63.

[24] Am. Compl. ¶¶ 34-67.

14, 2012.

III.     Discussion

    A.     Legal Standard

Fed. R. Civ. P. 8(a) requires that a complaint contain a "short and plain statement of the claim," and although a complaint need not contain "detailed factual allegations," it must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."[25] A complaint must consist of "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"[26] If the complaint alleges facts sufficient "to raise a right to relief above the speculative level," then the case may proceed "even if . . . actual proof of those facts [during discovery] is improbable."[27]

    B.     Application[28]

---

[25] Fed. R. Civ. P. 8(a); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

[26] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

[27] Twombly, 550 U.S. at 555-56.

[28] The court decides the disposition of Defendant's Motion independently of the USPTO's decision, Am. Online, Inc. v. AT&T Corp., 243 F.3d 812, 817 (4th Cir. 2001) (Finding that, "the express terms of the Lanham Act . . . vest ultimate adjudication of trademark disputes in federal courts."); see also Colt Defense, LLC v. Bushmaster Firearms, Inc., 486 F.3d 701, 705 (1st Cir. 2007) (stating that where, "the party claiming infringement has registered the [allegedly infringed] term on the Principal Register, the registration establishes a rebuttable presumption that the term is not generic.") (citing 15 U.S.C. §1115(a); Door Sys. Inc. V. Pro-Line Door Sys., Inc., 83 F.3d 169, 172 (7th Cir. 1996)); see also Questor Corp. v. World Indus., Inc., No. 4–76–Civ. 305, 1976 WL 21069, at *2 (D. Minn. Sept. 23, 1976) ("The value of a Patent Office determination of the right to register [a trademark] is . . . not res judicata or binding on this Court."), and gives no consideration to Defendant's failure to file an objection to BGE's registration. See, Betterbox Commc'ns Ltd. v. BB Techs., Inc., 300 F.3d 325, 332 n.3 (3d Cir. 2002) (stating that a party may challenge the registration of a trademark by filing an opposition before registration or by filing a petition to cancel after registration).

i.    Trademark Infringement, False Designation, and Damages

Trademark protection under the Lanham Act prevents one business from appropriating the goodwill of other businesses by creating and using marks confusingly similar to those used by its competitors.[29] In Boston Duck Tours, LP v. Super Duck Tours, LLC, the First Circuit gave extensive treatment to the basic principles of trademark law and the elements of a claim.[30] In order to state a claim for trademark infringement, a plaintiff must demonstrate first that its mark is entitled to protection, and second that the defendant's allegedly infringing conduct is likely to cause consumer confusion.[31]

A mark is entitled to trademark protection if the mark is distinctive enough to be "capable of functioning as a source-identifier of goods."[32] Marks are classified in the following five categories with order determined by increasing distinctiveness: "(1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful."[33] It is an established rule that "[t]he latter three categories of marks, because their intrinsic nature serves to identify a particular source of a

---

[29] Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 12 (1st Cir. 2008) (citing Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 116 (1st Cir. 2006)); see also Leejay, Inc. v. Bed Bath & Beyond, Inc., 942 F. Supp. 699, 701 (D. Mass. 1996) (entitlement to protection and likelihood of confusion are necessary elements of claim for trademark infringement); Boston Beer Co., LP v. Slesar Bros. Brewing Co., Inc., 9 F.3d 175, 180 (1st Cir. 1993) ("Once the determination has been made that a term is entitled to trademark protection, the pivotal inquiry becomes whether the allegedly infringing mark is likely to cause consumer confusion.").

[30] Boston Duck Tours, 531 F.3d at 11-14.

[31] Id. at 12; see also Aura Communications, Inc. v. Aura Networks, Inc., 148 F. Supp. 2d 91, 93 (D. Mass. 2001) (Tauro, J.).

[32] Id. (citing Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992)).

[33] Two Pesos, Inc., 505 U.S. at 768 (internal citations omitted).

product, are deemed inherently distinctive and are entitled to protection [,but] generic marks—those that refe[r] to the genus of which the particular product is a species—are not registrable as trademarks."[34]

The remaining category, descriptive marks, merely "'convey[] an immediate idea of the ingredients, qualities or characteristics of the goods' to which they are attached."[35] Because descriptive marks are not inherently distinctive, they do not automatically qualify for trademark protection.[36] A descriptive mark may, however, achieve an entitlement to protection "if it [acquires] distinctiveness through secondary meaning."[37] In order to prove the acquisition of secondary meaning, a plaintiff must show "that the public associates the term or phrase not only with a specific feature or quality, but also with a single commercial source."[38] The court may consider several different types of evidence to determine the existence of secondary meaning, including "the length or exclusivity of use of a mark, 'the size or prominence of plaintiff's enterprise[,]' the existence of substantial advertising by plaintiff[,] the product's 'established place

---

[34] Id.

[35] Boston Duck Tours, 531 F.3d at 13 (quoting Equine Techs, Inc. v. Equitechnology, Inc., 68 F.3d 542, 544 (1st Cir. 1995)).

[36] Boston Duck Tours, 531 F.3d at 13.

[37] Id.

[38] Id.; see also Two Pesos, 505 U.S. at 769 (stating that a mark may be registered when it becomes distinctive of a single source); see also Kellogg Co. v. Nat'l Biscuit Co., 305 U.S. 111, 113 (1938) ("[Plaintiff] must show that the primary significance of the term in the minds of the consuming public is not the product but the producer.").

in the market[,]' and 'proof of intentional copying.'"[39]  Moreover, secondary meaning can be determined by considering a "particular trade or 'branch of the purchasing public.'"[40]

The parties agree that BGE is a descriptive mark. The USPTO classified it as such in its Office Action of September 13, 2011.  In order to state a claim of entitlement to protection, therefore, Plaintiff must plead that BGE has plausibly acquired secondary meaning in the minds of consumers.[41] Plaintiff's Amended Complaint alleges that BGE "has acquired considerable distinctiveness[,] has become well known," "has developed recognition, trust and goodwill with consumers," and has become "identified with" Plaintiff's business.[42]  It also asserts that Plaintiff has done business under the mark for twelve years.[43] Plaintiff alleges a strong commercial presence in the market for stone products in the Northeastern United States by alleging that it is one of the largest retailers of granite, marble, and other stone products in that region.[44] Plaintiff has taken steps to protect BGE as a mark by registering it with the Commonwealth of Massachusetts, and investing in advertising to connect its goods with the name BGE.[45] Plaintiff

---

[39] I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 42 (1st Cir. 1998) (quoting Boston Beer, 9 F.3d at 182; President & Trs. of Colby Coll. v. Colby Coll.–N.H., 508 F.2d 804, 807-08 (1st Cir.1975)).

[40] I.P. Lund Trading ApS, 163 F.3d at 42 (quoting Colby Coll., 508 F.2d at 808).

[41] See e.g., id. ("The secondary meaning analysis is primarily a subjective one, looking into the minds of potential customers.").

[42] Am. Compl. ¶¶ 15-16, 36.

[43] Am. Compl. ¶ 7.

[44] Am. Compl. ¶ 10.

[45] Am. Compl. ¶¶ 9, 12.

has operated the website www.bgeusa.com for over ten years[46] and belongs to a national association for businesses dealing in stone products.[47] Finally, Plaintiff alleges intent on the part of Defendant to copy Plaintiff's mark and to infringe on Plaintiff's established reputation and goodwill.[48] On its face Plaintiff's Amended Complaint contains sufficient facts to support a claim that the mark has acquired distinctiveness through secondary meaning and is therefore entitled to protection under the Lanham Act.

Having determined that Plaintiff states a plausible claim for entitlement to trademark protection, the court turns to the second element of a cause of action under the Lanham Act: the likelihood that Defendant's allegedly infringing use will result in consumer confusion. The First Circuit interprets this requirement "to mean 'more than the theoretical possibility of confusion.'"[49] When determining whether confusion is likely, the First Circuit considers the following eight factors set out in Pignons S.A. de Mecanique de Precision v. Polaroid Corp.:

> [1] the similarity of the marks; [2] the similarity of the goods; [3] the relationship between the parties' channels of trade; [4] the relationship between the parties' advertising; [5] the classes of prospective purchasers; [6] evidence of actual confusion; [7] the defendants' intent in adopting its mark; and [8] the strength of the plaintiff's mark.[50]

---

[46] Am. Compl. ¶ 13.

[47] Am. Compl. ¶ 14.

[48] Am. Compl. ¶¶ 32, 39, 43, 49, 56, 63.

[49] Boston Duck Tours, 531 F.3d at 12 (quoting Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr., 103 F.3d 196, 200 (1st Cir. 1996)).

[50] Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981).

The court considers these factors collectively, and no one factor is necessarily determinative.[51] Allegations of actual customer confusion, nonetheless, lend particularly strong support to a claim that a likelihood of future confusion exists.[52] For example, in Attrezzi, LLC v. Maytag Corp., the First Circuit found that eight misdirected emails and about twelve mistaken telephone calls sufficed to show actual consumer confusion.[53]

Here, Plaintiff alleges that in late 2010 and early 2011, several instances of actual customer confusion occurred in which customers who had been referred to BGE initially contacted GBG by mistake.[54] Plaintiff also alleges that Defendant sells the same stone products as Plaintiff does in the same geographic area, that the two use similar channels of commerce and means of advertising, and that they have similar classes of customers. In addition, Plaintiff states that it and Defendant both market through websites with similar domain names and formats.[55]

If a mark is entitled to protection, the strength of the mark determines how much weight its entitlement carries under a Pignons analysis.[56] The similarity of BGE with GBG in sight, sound,

---

[51] Volkswagenwerk A.G. v. Wheeler, 814 F.2d 812, 817 (1st Cir. 1987) (analyzing Pignons, 657 F.2d at 487).

[52] Attrezzi, LLC v. Maytag Corp., 436 F.3d 32, 40 (1st Cir. 2006) ("[E]vidence of actual confusion [is] often deemed the best evidence of possible future confusion."); see also Beacon Mut. Ins. Co. v. OneBeacon Ins. Group, 376 F.3d 8, 18 (1st Cir. 2004) ("Evidence of actual confusion is often considered the most persuasive evidence of likelihood of confusion because past confusion is frequently a strong indicator of future confusion.").

[53] Attrezzi, 436 F.3d at 40.

[54] Am. Compl. ¶ 10.

[55] Am. Compl. ¶¶ 25-29.

[56] Boston Duck Tours, 531 F.3d at 29 (stating that the significance of the similarity factor varies directly with the strength of the mark allegedly infringed upon).

and meaning – because both contain the phrase "Boston Granite"– offers support to Plaintiff's claim of a likelihood of confusion.[57] Plaintiff's allegations regarding distinctiveness and secondary meaning, as set forth above, also weigh in favor of protection.

Plaintiff alleges that Defendant, in adopting GBG as its mark, engaged in a deliberate attempt to capitalize on Plaintiff's established good will, undertaken at precisely the time that Defendant changed the focus of its business to exactly that of Plaintiff's business.[58] Plaintiff also alleges that Defendant continued to use the mark GBG after Plaintiff warned Defendant of possible infringement. Defendant is also alleged to have expanded its business into Plaintiff's existing area of operation after representing to Plaintiff that it did not intend to do so.[59] Taken together, the allegations in Plaintiff's Amended Complaint address each of the eight Pignons factors and state a plausible claim of a likelihood of confusion between Plaintiff's and Defendant's marks.

The Amended Complaint contains enough facts to sustain a claim of the entitlement of the mark BGE to trademark protection based on its distinctiveness acquired through secondary meaning and the likelihood that the coexistence of the two marks will result in consumer confusion. The court, therefore, DENIES Defendant's Motion to Dismiss with respect to Plaintiff's Count I for trademark infringement, Count II for false designation, and Count IV for recovery of profits, damages, costs, and attorney's fees under the Lanham Act.

        ii.        State Law Claims: Unfair Competition and Trademark Infringement

---

[57] Id.

[58] Am. Compl. ¶¶ 17-20, 32.

[59] Am. Compl. ¶¶ 22-26.

The standard for trademark infringement under Mass. Gen. Laws ch. 93A § 11 and 110H § 12, and the common law of trademark infringement is essentially the same as that under the Lanham Act.[60] Massachusetts trademark law, like the Lanham Act, requires Plaintiff to plead an entitlement to trademark protection because of the distinctiveness of its mark and a likelihood of confusion from Defendant's allegedly infringing use.[61] Because Plaintiff has alleged a plausible claim for relief under the Lanham Act, as set forth above, the court finds that Plaintiff has also alleged a plausible claim for relief state law.[62] Accordingly, Defendant's Motion to Dismiss is DENIED as to Plaintiff's Count V for violation of Mass. Gen. Laws ch. 110H §12; Count VI for unfair competition; and Count VII for common law trademark infringement.

   iii. Trademark Dilution

The Federal Trademark Dilution Act ("FTDA") and the Massachusetts Anti-Dilution Statute protect only particularly distinctive and famous marks. Like the Lanham Act, the FTDA requires that a mark be capable of acting as a source-identifier for goods, but also requires that

---

[60] Leejay v. Bed Bath & Beyond, Inc., 942 F. Supp. 699, 701 n.2 (D. Mass. 1996) ("Because trademark infringement is defined in essentially the same terms under the Lanham Act and under [Mass. Gen. Laws ch. 93A and 110B and the common law of trademark infringement], . . . state claims will not be different enough to merit separate discussion.") (interpreting the present statute's predecessor, Mass. Gen Laws ch. 110B § 11); see also Bay State Sav. Bank v. Bay State Fin. Servs., 484 F. Supp. 2d 205, 219 (D. Mass. 2007) ("To the extent plaintiff asserts claims for infringement, federal and state law are essentially identical, and accordingly the state claims do not merit separate discussion.").

[61] Pignons, 657 F.2d at 494 (stating that distinctiveness and likelihood of confusion are the relevant inquiries under present statute's predecessor).

[62] Bay State Sav. Bank, 484 F. Supp. 2d at 219; Leejay, 942 F. Supp. at 701 n.2.

13

the mark be "famous."[63] The FTDA defines a famous mark as one that is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."[64] National renown is "an important factor in determining whether a mark qualifies as famous under the FTDA."[65] As the First Circuit has pointed out, the standard for fame under the FTDA is "rigorous," and a descriptive mark that has become protectable through acquired secondary meaning is not automatically considered famous: "'the mere acquisition of secondary meaning to achieve trademark status in a non-inherently distinctive designation is nowhere near sufficient to achieve the status of "famous mark" under the anti-dilution statute.'"[66] While it is clear that a plaintiff may establish secondary meaning for the purposes of a Lanham Act claim "with reference to a particular trade or 'branch of the purchasing public,'"[67] a plaintiff must allege more than distinction within a particular market in order to proceed with a claim of dilution.[68]

The same high standard for protection from trademark dilution under the FTDA appears

---

[63] I.P. Lund Trading ApS, 163 F.3d at 46; see 15 U.S.C. § 1125(c)(1) ("[T]he owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark . . . that is likely to cause dilution . . . of the famous mark[.]").

[64] 15 U.S.C. § 1125(c)(2)(A).

[65] Id.

[66] I.P. Lund Trading ApS, 163 F.3d at 47 (quoting 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 24:91 (4th ed. 1996)).

[67] I.P. Lund Trading ApS, 163 F.3d at 42 (quoting Colby, 508 F.2d at 807-08).

[68] I.P. Lund Trading ApS, 163 F.3d at 47 (quoting McCarthy on Trademarks and Unfair Competition § 24:91).

in the FTDA's counterpart under Massachusetts state law.[69] Enacted in 2006, the text of Mass. Gen. Laws ch. 110H § 13 is identical to that of its predecessor, Mass. Gen. Laws ch. 110B § 12.[70] The First Circuit considered ch. 110B § 12 equivalent to the FTDA in its heightened distinctiveness requirement and in limitation of relief to "only the most distinctive trademarks."[71] This court has found that where a "plaintiff's . . . marks are geographically descriptive and do not have any particular inherent distinctiveness, a plaintiff cannot succeed on its state-law dilution claim."[72] Like the FTDA, then, Mass. Gen. Laws ch. 110H § 13 requires a plaintiff bringing a claim of trademark dilution to allege a high degree of distinctiveness.

Under the heightened standards of both the FTDA and the Massachusetts Anti-Dilution Statute, Plaintiff fails to allege sufficient facts to establish that BGE is a famous mark and to support its claim of dilution. Plaintiff does not allege that BGE is a mark recognized by the general consuming public of the United Sates, nor does it offer facts that reasonably support such

---

[69] Bay State Sav. Bank, 484 F. Supp. 2d at 219 (declining to find a mark that was "geographically descriptive" and without "any particular inherent distinctiveness" was entitled to protection under the Massachusetts anti-dilution law, and stating that the Massachusetts anti-dilution statute is "similar to its federal counterpart," and that, "[i]n order to prevail on an anti-dilution claim under Chapter 110B, plaintiff is required to show that its marks are 'distinctive' and that defendant's use of similar marks has created a likelihood of dilution." ); see Mass. Gen. Laws ch. 110H § 13 (2006) (originally enacted as Mass. Gen. Laws 110B § 12 (1973)).

[70] Compare Mass. Gen. Laws ch. 110H § 13 ("Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.") with Mass. Gen. Laws ch. 110B § 12 (using identical language).

[71] Bay State Sav. Bank, 484 F. Supp. 2d at 219(citing Pignons, 498 F.Supp. at 817-18 (analyzing the current statute's predecessor, which contained identical statutory language)).

[72] Bay State Sav. Bank, 484 F. Supp. 2d at 219.

an inference.[73] Plaintiff states that it is one of the largest stone distributors in New England, and that it does business in New York and Pennsylvania as well.[74] Plaintiff also alleges that its marketing and promotion are "widespread;" that its mark has become recognized and "well-known" among consumers; and that it belongs to the Marble Institute of America, a national professional association for businesses dealing in stone products.[75] Plaintiff includes the allegation that it imports stone products from internationally located suppliers, among whom BGE is a well known mark.[76]

The allegations in Plaintiff's Amended Complaint are not enough to imply that Plaintiff's mark is well known to more than a limited segment of the consuming public. These allegations lead only to the inference that Plaintiff has established a strong presence in the market for stone products in the Northeastern United States, and perhaps even in the national and international markets for stone products. Plaintiff does not allege that BGE has achieved national renown or that BGE is recognized to the general consuming public of the United States[77] outside the "particular trade or 'branch of the purchasing public'"[78] involved in the purchase and sale of stone products. Plaintiff has not alleged more than the acquired distinctiveness necessary to entitle a geographically descriptive mark to protection from trademark infringement. By itself, this set of

---

[73] Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

[74] Am. Compl. ¶ 6.

[75] Am. Compl. ¶¶ 12, 14-16.

[76] Am. Compl. ¶ 11.

[77] 15 U.S.C. § 1125(c)(2)(A).

[78] I.P. Lund Trading ApS, 163 F.3d at 47 (quoting Colby College, 508 F.2d at 807-08).

allegations is insufficient to establish that BGE is famous for the purposes of a dilution claim under federal and state law. Plaintiff, therefore, has failed to state a claim for trademark dilution. Plaintiff's Count III under the FTDA and Count V for violation of chapters 110H § 13 are DISMISSED.

        iv.    Mootness

After Defendant filed its Motion to Dismiss Plaintiff's Complaint [#7], Plaintiff filed its Amended Complaint [#10], which superseded the original Complaint [#1] and which Defendant challenged anew with its Motion to Dismiss Plaintiff's Amended Complaint [#12]. The court accordingly DENIES AS MOOT Defendant's first Motion to Dismiss [#7].

IV.    Conclusion

For the reasons stated above, Defendant's Motion to Dismiss Plaintiff's Amended Complaint [#12] is hereby DENIED with respect to Counts I, II, and IV under the Lanham Act and Counts VI, VII, and V for trademark infringement under state law. Defendant's Motion is ALLOWED with respect to Counts III and V for trademark dilution. Because Plaintiff's Amended Complaint [#10] supersedes its Complaint [#1], Defendant's Motion to Dismiss Plaintiff's Complaint [#7] is DENIED AS MOOT.

IT IS SO ORDERED.

                                                          /s/ Joseph L. Tauro
                                               United States District Judge